

# Helen F. Dalton and Associates, P.C.
## Attorneys at Law

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
T. 718.263.9591 ◆ F. 718.263.9598

August 17, 2020

**Via ECF**
The Honorable District Judge Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **Tapia, et al. v. Pesce Pasta Quattro, Inc., et al.**
**18-CV-3865 (KPF)**

**Santiago, et al. Pesce Pasta Quattro, Inc., et al.**
**18-CV-10487 (KPF)**

Dear Judge Failla:

Our office represents the Plaintiffs in the above-referenced matters and we submit this joint letter motion on behalf of both parties seeking approval of the Settlement Agreement (attached hereto as Exhibit 1) ("the Agreement") as fair and reasonable. The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-336* as a basis for why the Court should approve the Agreement.

## History of Litigation and Settlement Negotiations

*The Tapia Matter*

Plaintiffs Carlos Tapia ("Tapia") and Gabriel Martinez ("Martinez") filed a Collective Action Complaint against Pesce Pasta Quattro, Inc. ("Pesce Pasta"), James Marchignoli ("J. Marchignoli" or 'James'), and Christopher Marchignoli ("C. Marchignoli" or "Cris") (collectively, "the Defendants") on April 30, 2018. The case was assigned Docket No. 18-CV-3865. In the Complaint [Dkt. No. 1], Tapia alleged that he was not paid proper minimum wage rates and overtime wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Martinez alleged that he was not paid proper overtime wages in violation of the FLSA and NYLL. Both Plaintiffs also brought causes of action under NYLL § 195, alleging violations of the notice and wage statement requirements. Although this action was filed as a Collective Action Complaint, Plaintiffs never sought certification of a collective action and this matter was only litigated on behalf of Tapia and Martinez. Defendants interposed an Answer on July 10, 2018, denying all material allegations made by Tapia and Martinez.

*The Santiago Matter*

Plaintiffs Pablo Lopez Santiago ("Santiago") and Angel Caceres ("Caceres") (together with Tapia and Martinez, "the Plaintiffs") filed a Complaint against the same Defendants on November 12, 2018. The case was assigned Docket No. 18-CV-10487. In the Complaint [Dkt. No. 1], Santiago and Caceres both alleged that they were not paid proper overtime wages in violation of the FLSA and NYLL. Both Plaintiffs also brought causes of action under NYLL § 195, alleging violations of the notice and wage statement requirements. Defendants interposed an Answer on January 18, 2019, denying all material allegations made by Santiago and Caceres.

*Discovery and Settlement Negotiations*

As an initial matter, it should be noted that Pesce Pasta closed for business in October 2016 and prior to the filing of either action. Furthermore, Defendants have maintained throughout this litigation that Cris was not Plaintiffs' employer under the FLSA and NYLL.

The parties engaged in an extensive exchange of paper discovery in the *Tapia* Matter from July through September 2018 and first appeared for a Settlement Conference before The Honorable Judge Stewart D. Aaron on September 18, 2018. A settlement was not reached at the time, but the parties agreed to an additional document exchange and to continue settlement negotiations. The parties again appeared before The Hon. Judge Aaron on October 25, 2018, but again, the parties were unable to reach a settlement. In November and December 2018, the parties conducted the depositions of Tapia, Martinez, J. Marchignoli, C. Marchignoli as well as a witness identified by Defendants, Nuno De Sousa.

The parties also engaged in an extensive exchange of paper discovery in the *Santiago* Matter beginning in February 2019 and in preparation of the parties' court-annexed mediation conference. The parties mediated both matters on March 7, 2019, but were unable to reach a settlement at that time. Thereafter, parties held the depositions of Santiago and Caceres as well as a witness identified by Defendants, Carin Ipinice.

On June 10, 2019, Defendants filed a Statement of Relatedness as to the *Tapia* Matter and the *Santiago* Matter and on July 10, 2019, the Court accepted the cases as related. By Court Order, all discovery closed in both matters on November 8, 2019. Although Defendants filed a Motion for Partial Summary Judgment in December 2019, the parties remained active in settlement negotiations after the close of discovery. The parties continued their settlement negotiations following the Court's Order granting in part and denying in part Defendants' Motion on April 30, 2020. These negotiations continued for approximately two-and-a-half months, culminating with a settlement in principle on July 15, 2020 and followed by a formal settlement agreement memorializing the agreed-upon terms, which has been submitted for the Court's review and approval.

## The Wolinsky Factors

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

1. **The Plaintiffs' range of possible recovery:**

**Plaintiffs' Position**

Plaintiff Tapia alleged that he was employed by Defendants for approximately three years during the relevant statutory period and regularly worked 60 hours per week. Tapia alleged that he was paid $5.00 per hour for all hours worked and, as such, his regular hourly rate was at all times below the applicable minimum wage. Tapia also alleged that he was not compensated at time-and-a-half for his hours worked in excess of 40 hours per week. Although Tapia received tips, Tapia alleged that the tip amounts reflected in Defendants' records were not consistent with the tips that he received such that Defendants were not entitled to take a tip credit that would entitle them to pay him lower than the applicable minimum wage.

Plaintiff Martinez alleged that he was employed by Defendants for approximately four-and-a-half years during the relevant statutory period and regularly worked 60 hours per week. Martinez alleged that he was paid a flat weekly salary that only partially compensated him for his overtime hours. Martinez alleged that he was not compensated for approximately 8 overtime hours per week.

Plaintiff Caceres alleged that he was employed by Defendants for approximately four years during the relevant statutory period and regularly worked 60 hours per week. Caceres alleged that he was paid a flat weekly salary that did not compensate him for approximately 20 overtime hours per week.

Plaintiff Santiago alleged that he was employed by Defendants for approximately one year and four months during the relevant statutory period and regularly worked 72 hours per week. Santiago alleged that he was paid $8.75 per hour for all hours worked, even in excess of 40 hours per week.

Plaintiffs initially claimed approximately $270,000.00 in unpaid overtime and minimum wages. Thereafter, Defendants provided time and pay records for each Plaintiff, which Plaintiffs took into consideration in agreeing to settle this matter. Although Plaintiffs disputed the accuracy of certain records and believed that Defendants' own records showed underpayments, Plaintiffs recognized the burden that they would have to overcome due to the presence of these records. Plaintiffs believe that a reasonable expected range of recovery would have been between $75,000.00.00 and $150,000.00, should Plaintiffs prevail at trial, but which amount could actually be less depending on the weight given to Defendants' time and pay records at the time of trial.

**Defendants' Position**

Defendants' maintain that the time and pay records they produced in discovery[1] together with the testimony adduced during the Plaintiffs' respective depositions demonstrated that Plaintiffs' did not regularly work 60 or 72 hours each week for Pesce Pasta during the relevant statutory period, as Plaintiffs alleged in their respective Complaints. Additionally, for those hours the Plaintiffs actually worked for Pesce Pasta during the relevant statutory period (typically between 40 and 50 hours per week, but sometimes less than 40 hours per week), discovery revealed that Plaintiffs were paid at least or more than their proper overtime and minimum wages for all hours worked.

Additionally, Defendants' maintain that, at trial, the Plaintiffs will not be able to demonstrate by a preponderance of the evidence that Cris possessed the power to control the nature and conditions of Plaintiffs' employment such that he was their employer under the FLSA and NYLL and controlling Second Circuit authority.

**2. The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":**

Although the discovery had closed in this matter, the settlement still enables the parties to avoid the anticipated burdens and expenses of litigation. Had the parties not reached a settlement, both sides faced significant time and expenses preparing all of the necessary pre-trial documents required by the Court. The parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted over one week.

Each Plaintiff would have been required to take multiple days off from his current job and Plaintiffs would have incurred expenses preparing exhibits for trial and hiring court-licensed translators for each Plaintiff throughout the trial. Moreover, due to the backlog of trials caused by the Covid-19 pandemic, Plaintiffs were concerned about the timing of a trial.

**3. The seriousness of litigation risks faced by the parties:**

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiffs were confident that they could succeed on all their claims, Plaintiffs recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. The seriousness of this risk favored the settlement for Plaintiffs.

---

[1] These records include: (a) employee time records showing the time the Plaintiffs logged in and out of the restaurant each day (Pesce Pasta instituted an electronic sign-in system starting in 2013 – employees of the restaurant used to punch in their time through time cards before that time), (b) check register reports showing hours worked, rates applied and amounts paid (including tips to Tapia) and copies of paychecks given to Plaintiffs and (c) acknowledgment forms signed by each of the Plaintiffs showing the hours they worked in a particular week which forms they signed when they picked up their paycheck at the restaurant each week.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys fees.

**4. Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

The parties engaged in extensive back-and-forth settlement talks for approximately two years. The parties began their formal settlement discussions in September 2018, attending a Settlement Conference before The Hon. Judge Aaron. The parties attended a second Settlement Conference before The Hon. Judge Aaron in October 2018. The parties also utilized the SDNY Mediation Program and attended a mediation at the SDNY Courthouse in March 2019. The parties were only able to reach a settlement after continued negotiations over the last three months.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

The Agreement was the product of extensive arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts. The Agreement does not contain any confidentiality or release of claims unrelated to the wage-and-hour claims asserted in this matter and comports with *Cheeks* and Second Circuit case law.

**5. The possibility of fraud of collusion:**

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

**6. Other Considerations:**

Plaintiffs' decision to settle this matter also factored in other considerations. One of the most important considerations was whether Plaintiffs would be able to collect on judgments against Defendants, even if they were successful at trial. Although the corporate entity remains active, the restaurant, Pesce Pasta, closed in 2016 and has not been operational in nearly four years. Moreover, Luciano Marchignoli, who Plaintiffs understood to be the owner of Pesce Pasta, passed away in 2015. Plaintiffs conducted a thorough asset search on the remaining Defendants, James and Cris Marchignoli, and were concerned that they may be judgment-proof. During the parties' negotiations, this issue was continually raised by Defendants and given that neither individual Defendant owned or operated an active business, Plaintiffs believed it was in their best interest to accept a guaranteed payment through a Court-approved settlement in the near future. These concerns were amplified by the current Covid-19 pandemic and not only its potential effect on Defendants' ability to pay should Plaintiffs have obtained a judgment, but also as to the timing of a trial, given the expected backlog of civil litigation.

**Attorneys' Fees and Distribution to Plaintiffs**

The parties agreed to a global settlement of $65,000.00 for both the *Tapia* and *Santiago* matters. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $41,244.00. Each Plaintiff will receive an amount proportional to Plaintiffs' counsel's individualized calculations of damages, which take into account the length of each Plaintiff's employment, the rate of pay received by each Plaintiff, and the number of overtime hours alleged to have been worked by Plaintiffs. Each Plaintiff's share of the settlement proceeds also take into account the records provided by Defendants and each Plaintiff's potential risk of recovery at trial.

Plaintiffs' counsel respectfully requests $3,134.00 for identifiable expenses in both matters, which includes:

- the Southern District of New York filing fee in the Tapia Matter: $400.00
- the Southern District of New York filing fee in the Santiago Matter: $400.00
- the costs of service of the Summons and Complaint on Defendants: $295.00
- the costs associated with conducting, defending and ordering transcripts for 8 depositions (all named individual parties and two Defendant witnesses): $2,024.00
- postage fees: $15.00

Plaintiff's counsel respectfully requests one-third of the settlement less the expenses ($61,866.00), or approximately $20,622.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $23,756.00.


**Settlement Amount:** $65,000.00
**Attorneys' Expenses:** $3,134.00
**Settlement less Expenses:** $61,866.00
**Requested Attorneys' Fees:** $20,622.00 ($61,866.00 / 3)
**Total payable to Attorneys:** $23,756.00 ($20,622.00 + $3,134.00)
**Total payable to Plaintiffs:** $41,244.00 ($65,000.00 - $23,756.00)

Plaintiffs' attorneys and their clients have a retainer agreement that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.,* 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of both matters and the recovery secured through their efforts. Plaintiffs' counsel has litigated the *Tapia* matter for nearly three-and-a-half years and has litigated the

*Santiago* matter for almost two years. Both matters entailed extensive paper discovery, requiring Plaintiffs' counsel to review thousands of pages of records provided by Defendants in addition to providing their own discovery responses. Additionally, Plaintiffs' counsel defended four depositions of their clients while conducting the depositions of both named Defendants as well as two witnesses identified by Defendants. Plaintiffs' counsel attended numerous scheduling conferences before the court in addition to two settlement conferences and a mediation. Lastly, after the close of discovery, Plaintiffs' counsel defended a Motion for Partial Summary Judgment on the issue of whether C. Marchignoli was Plaintiffs' employer. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

## Closing

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of nearly two years of negotiations and the terms of the Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Agreement. We thank Your Honor for her consideration and remain available to provide any additional information.

Respectfully submitted,

_/s/_____
Roman Avshalumov, Esq.
James O'Donnell, Esq.